IN THE UNITED STATES

COURT OF FEDERAL CLAIMS

Case No. 1:25-cv-02097-RAH

ANGELIINA LYNN LAWSON,

PLAINTIFF,

v.

UNITED STATES,

DEFENDANT

PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

Plaintiff Angeliina Lynn Lawson submits this Response to the Court's December 11, 2025 Order to Show Cause. Plaintiff clarifies that she is not attempting to appeal or overturn any Tenth Circuit decision. Rather, she seeks monetary compensation under the Tucker Act, 28 U.S.C. § 1491(a)(1), for a compensable injury under the Takings Clause caused by federal inaction between May and December 2025. During that period, the United States Court of Appeals for the

1

Tenth Circuit failed to act on Plaintiff's appeals and emergency motions, resulting in a deprivation of Plaintiff's access. This federal inaction, and the resulting compensable harm arising from jurisdictional inaction to Plaintiff's protected interests, form the basis of a Fifth Amendment Takings Clause and Tucker Act, claim within this Court's jurisdiction. Plaintiff respectfully shows cause why her Complaint states a present, compensable claim for a constitutional taking and thus why this Court should preserve jurisdiction and deny dismissal under Rule 12(b)(1).

I. INTRODUCTION

As confirmed by the Supreme Court's recent decision in DeVillier v. Texas (DeVillier v. Texas, No. 22-913, 601 U.S. ___, 2024 WL 1642826, at *5 (Apr. 16, 2024)), the Fifth Amendment's Takings Clause is self-executing – it directly guarantees a remedy even before any court pronouncement. Justice Thomas's opinion explains that "a property owner acquires an irrevocable right to just compensation immediately upon a taking", precisely "because of 'the self-executing character' of the Takings Clause 'with respect to compensation'" (United States v. Great Falls Mfg. Co., 112 U.S. 645, 656 (1884)). In other words, the government's obligation to compensate is triggered at the moment the property is taken, not only after a court rules in the owner's favor. This principle remains true even where no court has yet ruled on the matter, because the constitutional mandate itself confers the right to be made whole at the time of the compensable harm arising from jurisdictional inaction. Indeed, the very design of takings law has long been to ensure that property owners can obtain redress without awaiting a separate legislative cause of action or judicial declaration. Congress's enactment of the Tucker Act established the Court of Federal Claims as a forum for monetary claims against the United States, and the Supreme Court interpreted that Act to bring takings claims directly against the

federal government for just compensation. Both state and federal law have thus provided a "complex network of remedies" to uphold the Just Compensation guarantee. Legal commentators, such as; Robert McNamara, DeVillier v. Texas: The Last Gasp of Federalism or the Start of Something New?, 2023–24 Cato Sup. Ct. Rev. 249 (2024) observing the DeVillier case emphasize that these avenues for relief confirm a fundamental point: the duty to compensate attaches as soon as the government interferes with property access, even absent an explicit statutory cause of action or prior court decision. In the words of the Supreme Court's early jurisprudence, "the provision for compensation … is a condition precedent annexed to the right of the government to deprive the owner of his property without his consent." Aditya Bamzai & David N. Goldman, The Takings Clause, the Tucker Act, and Knick v. Township of Scott, 41 Yale J. on Reg. Bull. 1 (2023). Thus, once the government action causes a taking, the Constitution itself (buttressed by the Tucker Act's waiver of sovereign immunity) ensures the owner can seek immediate redress for that period of loss. Here, that compensable harm arising from jurisdictional inaction occurred between May and December 2025. Accordingly, under the Takings Clause the obligation to provide just compensation attached at that time, and Claimant is entitled to pursue compensation for the loss of use and access during that interval.

    II.     JURISDICTION WITHIN TUCKER ACT

Plaintiff's Complaint is grounded in the Tucker Act and the Fifth Amendment's Just Compensation Clause. The Tucker Act grants this Court jurisdiction over claims against the United States founded upon the Constitution, including claims for just compensation under the Fifth Amendment. A claim arising from a taking of private property by the United States "normally fall[s] within the jurisdiction of the Court of Federal Claims". Here, Plaintiff's claim is that the United States, through the federal judiciary's prolonged inaction, has effected a taking

of her protected access and property without just compensation. This is an original action for compensation, analogous to an inverse condemnation claim for the compensable harm arising from jurisdictional inaction. The Takings Clause provides the appropriate framework for addressing governmental paralysis that permits private access to be extinguished under color of law. This Court's jurisdiction under § 1491(a)(1) remains undisturbed by that inaction.

III. FACTS AND BACKGROUND

The Order to Show Cause observed that, "from the face of her complaint," Plaintiff might appear to be seeking review of the Tenth Circuit's failure to decide her appeals. Plaintiff emphasizes that she is not asking this Court to scrutinize or overturn any decision of the Tenth Circuit. She is not seeking injunctive relief or a reversal of the Tenth Circuit's outcomes; indeed, there were no rulings to overturn. Instead, Plaintiff accepts the Tenth Circuit's inaction as a fact and seeks compensable injury under the Takings Clause and Tucker Act, that inaction allowed. Adjudicating this takings claim can be resolved without "requir[ing] the court to scrutinize the actions of another tribunal." Plaintiff's claim does not allege that the Tenth Circuit acted wrongly; she alleges that the Tenth Circuit failed to act at all, creating a vacuum in which her access were lost. The focus is on the effects of federal inaction a compensable harm arising from jurisdictional inaction attributable to the United States rather than on the correctness of any judicial decision. Thus, the Court can grant relief based on the fact of the federal inaction and its consequences. This keeps the Court well within its Tucker Act jurisdiction.

From May through December 2025, the Tenth Circuit's failure to rule on Plaintiff's pending matters created a jurisdictional vacuum with dire consequences. Plaintiff was involved in a Kansas state case which she properly removed to federal court under 28 U.S.C. § 1443(1) due to loss of protected legal access and liberty interests. After the case was remanded to state court and

appealed, multiple critical motions were left pending in the Tenth Circuit for excessive amount of time without decision. As of December 8, 2025 (when Plaintiff filed a notice in the Tenth Circuit), the following matters had received no ruling or even administrative response:

- Motion to Certify Constitutional Question (Dkt. 28) – filed July 22, 2025, pending 139 days without a decision.

- Motion for Fraud Upon the Court (Dkt. 35) – filed August 25, 2025, pending 105 days.

- Emergency Motion for Order to Show Cause (Dkt. 50) – filed November 7, 2025, pending 31 days, exceeding the Circuit's 5-day rule for emergency relief.

- Rule 27 Motion to Preserve Evidentiary Record (Dkt. 52) – filed November 14, 2025, pending 24 days.

- Emergency Motion to Stay State Proceedings (Dkt. 54) – filed November 18, 2025, pending 20 days, also past the 5-day emergency window.

This unresponsiveness by the federal appellate court meant that no federal mandate or guidance issued for over eight months, despite the ongoing emergency. The result was a legal void in which the state authorities proceeded unchecked. As Plaintiff documented in the Tenth Circuit record, "inaction has created a jurisdictional vacuum where state actors continue to act without legal authority," taking matters into their own hands while the case languished in federal limbo. In direct loss of functional legal access guaranteed under federal law of federal supremacy and the automatic stay triggered by federal removal, the Kansas state court (Anderson County) continued proceedings and allowed the seizure of Plaintiff's property access without lawful jurisdiction. The state functioned as if no federal case were pending, effectively nullifying

Plaintiff's access entitlements, her right of access to a federal forum, and her protected parental liberty interests all under color of law.

This taking, the deprivation of Plaintiff's federally secured access, is attributable to the United States under inverse condemnation principles, because the federal judiciary failed to act during its period of exclusive jurisdiction. That constitutional inaction permitted state actors to interfere with Plaintiff's property interests, triggering the government's duty under the Fifth Amendment to provide just compensation.

The compensable harm arising from jurisdictional inaction suffered by Plaintiff has been both concrete and constitutionally significant. The state's actions enabled solely by the absence of timely federal adjudication resulted in a forcible and unlawful deprivation well as the total loss of federally secured access under disability law, and functional legal access guaranteed under federal law. For a combined period exceeding six months during which time no effective federal forum was available due to the Tenth Circuit's failure to rule. The state court proceeded to schedule a hearing on December 15, 2025, despite the pending federal removal and the automatic stay that should have applied, signaling its continued assertion of jurisdiction over the matter.

These injuries are traceable to federal inaction, which permitted jurisdiction to be effectively transferred to state actors without lawful authority. In constitutional terms, this constitutes a constructive taking of protected access, for which the United States bears responsibility under inverse condemnation doctrine. This jurisdictional forfeiture, enabled by governmental inaction resulting in jurisdictional forfeiture, in Moden and Causby, created the very "constitutional stalemate" Plaintiff now challenges, and triggers the Fifth Amendment's requirement for just compensation.

IV. SPECIFIC CLAIMS AND LEGAL BASIS

Plaintiff's Fifth Amendment taking claim is ripe and well-defined. She has quantified the losses resulting from the federal inaction and formally presented her compensation demands on the record. Notably, on December 8, 2025, Plaintiff filed in the Tenth Circuit a Notice of Constitutional Stalemate and Record of Federal Appellate Failure (Dkt 56 in Case No. 25-3097) to present her Tucker Act claims to the United States. In that filing which was served on the Department of Justice and remains unopposed Plaintiff set forth a detailed fee schedule and ledger totaling $50,000,000 claim. The claim breakdown includes, inter alia, an estimated $15,000,000 for the constructive taking of her access from inaction, $10,000,000 for the loss of access to a federal forum and denial under 28 U.S.C. § 1443(1), and the $50M claim reflects the full economic and compensable value of the protected access lost during the federal inaction. Plaintiff is suing over the consequences of the federal inaction are described in terms of lost access to illustrate the scope of the taking.

This presentment in the appellate court record stands uncontested no party or government entity objected to or rebutted the fee schedule. The uncontested nature of the presentment underscores that Plaintiff's claim is concrete and prima facie valid for jurisdictional purposes. Plaintiff has given the United States formal notice and an opportunity to address her Takings Clause claim; no relief was offered, and thus she has properly brought the claim to this Court for adjudication. In Takings Clause terms, the "taking" has already occurred, Plaintiff's fundamental access have been effectively appropriated or destroyed as a result of government action/inaction and she now seeks the constitutionally mandated compensation for that taking.

Crucially, Plaintiff is not asking this Court to evaluate whether the Tenth Circuit's delay was "right" or "wrong" as a matter of appellate procedure. She is not seeking an order compelling the

Tenth Circuit to act, nor any reversal of a state-court judgment. By contrast, what Plaintiff requests is monetary redress for a compensable harm arising from jurisdictional inaction, inflicted by the federal government's failure to safeguard her access. This Court can grant that relief by examining the effects of the federal inaction – the loss of Plaintiff's rightful interests – and determining that such effect constituted a taking requiring compensation. The inquiry focuses on Plaintiff's property interests and the impact of the government's conduct on those interests, not on the internal deliberations or motives of the Tenth Circuit. In this way, Plaintiff's suit mirrors a standard takings or inverse condemnation case: the government had the power to prevent a compensable harm arising from jurisdictional inaction but did not do so, thereby "allowing" Plaintiff's access be taken. Under the Tucker Act and Fifth Amendment, Plaintiff is entitled to pursue just compensation, the remedy our Constitution provides for individuals whose property access are taken for public purposes or through government authority.

Because Plaintiff's claim is framed entirely as a Fifth Amendment taking with a demand for monetary compensation, it falls squarely within this Court's jurisdiction. It presents a presently due obligation (just compensation) owed by the United States, rather than an impermissible appeal or request for equitable relief. The Court should therefore find that jurisdiction exists and proceed to adjudicate the claim on its merits, rather than dismissing it as beyond the Court's competence.

The Fifth Amendment's Takings Clause provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Important precedents demonstrate that when government inaction tantamount to action deprives an individual of the use, value, or ownership of a protected interest, the remedy is an award of just compensation. Plaintiff's theory of recovery is consistent with the following authorities:

- First English Evangelical Lutheran Church v. County of Los Angeles (482 U.S. 304 (1987)): The Supreme Court held that even a temporary regulatory taking that denies the owner all use of property triggers the constitutional obligation to pay compensation for the period of the taking. In other words, invalidating the government's action is not an adequate remedy by itself – the government must also compensate the loss during the time the taking was in effect. First English confirms that time-limited deprivations of property use are compensable. By analogy, Tenth Circuit's inaction forced loss of Plaintiff's access for those months is a compensable injury. The Constitution "is designed not to limit governmental interference with access, but to secure compensation in the event of otherwise proper interference amounting to a taking." Here, the delay itself the period of lost interests and lost functional legal access guaranteed under federal law is a compensable taking under the Fifth Amendment.

- Kimball Laundry Co. v. United States (338 U.S. 1 (1949)): This case involved a temporary takeover of a private business by the government during World War II. The Supreme Court ruled that just compensation for a temporary taking must account for all aspects of value taken or destroyed not only the physical assets, but also the intangible elements such as the business's going-concern value and customer relationships. The Government had "for all practical purposes preempted the [laundry's] trade routes" during its occupancy, so it was required to pay for the value of the temporary use of those routes and the resulting loss of clientele. Kimball Laundry establishes that when the government's actions cause a loss of intangible property value or opportunities, the owner must be made whole. In Plaintiff's case, the United States (through the federal court's inaction) constructive deprivation of parental liberty interests, legal access

9

pathways, and protected statutory entitlements under federal law during the period in question. Just as preempting a business's customer base for a time requires compensation, the destruction of Plaintiff's family integrity, legal options must be compensated. It would be "unfair to deny compensation for a demonstrable loss" that resulted directly from the government's control (or in this case, abdication of control) over the situation.

- Horne v. Department of Agriculture (576 U.S. 351 (2015)): In Horne, the Supreme Court made clear that the Takings Clause protects personal property just as fully as real property. The case struck down a federal program that required raisin farmers to surrender a portion of their crop, holding that "the Fifth Amendment requires the government to pay just compensation when it takes personal property, just as when it takes real property." This precedent is important here to underscore that property interests need not be land or buildings to be covered by the Takings Clause. Plaintiff's claim involves interests of "private property" in which the government must not take away without compensation. Horne counsels that the form of the property is no obstacle if an owner is deprived of any kind of private property by government action, the Just Compensation requirement applies.

- Lucas v. South Carolina Coastal Council (505 U.S. 1003 (1992)): In Lucas, the Supreme Court established a categorical rule for regulatory takings: if a regulation (or other government imposition) deprives an owner of all economically beneficial or productive use of their property, it is a per se taking requiring just compensation. The Court reasoned that eliminating all viable use of property is tantamount to a physical appropriation "the practical…equivalence of physically appropriating" the property and thus demands compensation. Although *Lucas* addressed real property rendered economically useless by

a development restriction, the Court's core principle applies here: where the government causes a total deprivation of use of a protected interest, the Takings Clause is triggered. During the period of the Tenth Circuit's inaction, Plaintiff was effectively denied all use and enjoyment of her protected parental access, procedural avenues to federal adjudication, and access to statutory protections under federal law. This complete extinguishment of functionally property-like interests parallels the categorical deprivation the Supreme Court identified as a per se taking in *Lucas*. During the relevant period, the government's inaction resulted in a total elimination of all beneficial use of Plaintiff's protected parental access and her legally cognizable ability to participate in federal adjudication. Under *Lucas*, such a comprehensive deprivation, when caused by government action or omission, constitutes a taking without the need for ad hoc balancing. The loss was so complete and consequential that the Fifth Amendment mandates just compensation, as the government's failure to act effectively nullified Plaintiff's ability to exercise these protected interests, producing precisely the type of government-caused deprivation the Takings Clause is designed to remedy.

In sum, these precedents support Plaintiff's claim that the government's inaction, which resulted in the loss of her protected interests, constitutes a compensable taking under the Fifth Amendment**.** Whether the government's conduct involves an affirmative regulation (*Lucas*), a physical occupation (*Kimball Laundry*), a temporary moratorium (*First English*), or an appropriation of personal property (*Horne*), the unifying principle remains: the Constitution mandates just compensation when the government takes private property or extinguishes vested interests, regardless of form. Plaintiff urges the Court to recognize that principle here. The United States government, through its judicial branch, allowed Plaintiff's valuable interests to be

effectively taken from her. Under the Tucker Act and Fifth Amendment, the proper course is not to dismiss her claim, but to require the government to answer for the compensation owed.

Plaintiff's uncontested filing in the Tenth Circuit record demonstrates that the government was aware of the claim and failed to deny its validity or amount. Thus, for purposes of this Court, the $50 million valuation stands uncontested. Also, ensure the wording makes clear that Dkt 56 was not seeking action by the Tenth Circuit; it was simply using the Tenth Circuit docket to deliver notice to the United States of the takings claim. The presentment is supportive of jurisdiction: it shows the claim is concrete, monetary, and was met with silence further proof that Plaintiff must seek relief here.

Clarifying government liability by omission, "Inaction as Taking" is one of the narrowest points of Tucker Act litigation is whether federal inaction, rather than affirmative government conduct, can constitute a compensable taking under the Fifth Amendment. Courts generally require a showing that the government's failure to act permitted, enabled, or directly caused the deprivation of a legally protected interest.

In this case that standard is met and exceeded:

- The federal appellate court's sustained refusal to rule on deprivation of lawful access, and emergency motions despite formal referral to a panel created the conditions under which the state court unlawfully resumed jurisdiction, a government-enabled loss of functional legal access guaranteed under federal law under 28 U.S.C. § 1446(d);
- The resulting compensable injury under the Takings Clause and Tucker Act, of constructive deprivation of parental liberty interests, legal access pathways, and protected

- statutory entitlements under federal law, final, and government-enabled, not speculative or self-inflicted;
- Petitioner filed a formal fee schedule of claims presentment into the Tenth Circuit record, and no federal agency, party or officer contested the amounts, causation theory, or the existence of compensable injury under the Takings Clause and Tucker Act.

This places the claim squarely within the "causative omission" framework recognized in takings law:

- United States v. Causby, 328 U.S. 256 (1946) compensable taking through government-enabled invasion of private interest;
- First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304 (1987) temporary deprivations by government restraint are compensable;
- Moden v. United States, 404 F.3d 1335 (Fed. Cir. 2005) takings liability may arise from indirect or systemic government action affecting protected access.

Thus, this is not a borderline theory of liability. It fits within recognized doctrines where government inaction enables the extinction of federal access with monetary consequences.

V. CONCLUSION

For the foregoing reasons, Plaintiff has established that her Complaint presents a claim within this Court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1). This case arises solely under the Takings Clause of the Fifth Amendment and seeks just compensation for specific, identifiable deprivations of property interests to federal inaction.

Plaintiff alleges that the United States, through its prolonged failure to act during a period of exclusive federal jurisdiction, effected a constructive taking of her protected interests — including diverted financial entitlements, extinguished access to a federal adjudicative forum, and the loss of legal and statutory access channels. These are not liberty-based claims, torts, or civil rights theories, but monetizable losses resulting from jurisdictional forfeiture, for which the Constitution mandates compensation.

This Court is authorized and uniquely positioned to determine the just compensation due. Plaintiff respectfully requests that the Court decline dismissal under Rule 12(b)(1) and permit the claim to proceed on the merits or leave to make necessary amendments to the claims for clarification in order to proceed.

The Tucker Act was enacted to ensure that those whose property is taken by the federal government have a forum in which to be heard. That promise applies with full force here. Plaintiff accordingly prays that this matter be allowed to advance toward resolution of the takings claim and that this Court affirm its role as guardian of the Just Compensation Clause.

Respectfully submitted,                                                                                              Dated: January 6, 2026

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson, Plaintiff Pro Se

Leavenworth, KS 66048

AngeliinaCourtRecords@gmail.com | (913) 972-1661

CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2026, a true and correct copy of the foregoing Response to Order to Show Cause was submitted to the United States Court of Federal Claims in accordance

with the Court's non-ECF filing procedures for pro se litigants. I further certify that a copy of this Response was served via first-class mail to the following:

Solicitor General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue NW, Room 5614
Washington, DC 20530-0001


/s/ Angeliina Lynn Lawson
Angeliina Lynn Lawson
Pro Se Plaintiff

15